UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

EDWARD ADAMS,                              )
                                           )
          Plaintiff(s),                    )
                                           )
     vs.                                   )          Case No. 2:05CV2 JCH
                                           )
JOYCE SIMPSON, et al.,                     )
                                           )
          Defendant(s).                    )

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment, filed September 20, 2005. (Doc. No. 21). The matter is fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff Edward Adams ("Adams") is currently confined to Southeast Correctional Center ("SECC"). (Defendants' Statement of Uncontroverted Facts ("Defendants' Facts"), ¶ 1). Previously, Adams was assigned to Northeast Correctional Center ("NECC"). (Defendants' Facts, ¶ 2). At all relevant times, Defendants were employed by the State of Missouri, Missouri Department of Corrections, in the following capacities: Jim Moore ("Moore"), Superintendent at NECC; Mary Riorden ("Riorden"), Associate Superintendent at NECC; Bill Stange ("Stange"), Functional Unit Manager ("FUM") for Housing Unit 6 at NECC; Richard Mullen ("Mullen"), Correctional Caseworker I at NECC; Carlos Sampson ("Sampson"), Correctional Caseworker at NECC; Joyce Simpson ("Simpson"), Librarian I at NECC; Cynthia Perkins ("Perkins"), mail room clerk at NECC; and Melvin Strange ("Strange"), Corrections Officer I at NECC. (Id., ¶¶ 3-12).

On May 18, 2004, Defendant Perkins issued Adams a Conduct Violation Report, stating in relevant part as follows:

> On the above date and approximate time as I was searching outgoing mail, I searched an envelope sent by Offender Edward Adams, 533505, to Johnna Shea Schaffer, an offender at WERDCC. Enclosed were 9 pages of green paper which were generated from the Libraries (sic) Legal computers. (Copyright 2004, West) The pages were not stamped as purchased. In addition according to canteen records, offender Adams has not purchased any copy cards this year, which would be needed to pay for the pages. This places offender Adams in violation of rule 22-Theft, rule 24-Contraband.

(Defendants' Exh. A-21). The hearing for this violation, conducted before Defendant Mullen, commenced on May 21, 2004, but was tabled in order to allow Adams to obtain witness statements. (Defendants' Facts, ¶ 14, citing Defendants' Exh. A-20). The hearing resumed on May 27, 2004, and Defendant Mullen eventually found Adams guilty of the offense. (Id., ¶¶ 15-16).[1]

On May 18, 2004, Defendant Melvin Strange issued Adams a Conduct Violation Report, stating in relevant part as follows:

> On the above date and approximate time, I, COI M. Strange, was conducting a cell search of 6C-238. Under the bottom bunk mattress I found: 216 37 cent stamps, 10 34 cent stamps, 3 33 cent stamps, 7 3 cent stamps, 36 1 cent stamps for a total amount of $84.88 worth of stamps. The bottom bunk is assigned to offender Adams, Edward # 533505. I also found numerous office supplies including: paper clips, rubber bands, binder clips, and post-it notes.
>
> The above items place[] offender Adams, Edward # 533505 in violation of rule # 24 contraband.

(Defendants' Exh. A-8). The hearing for this violation, conducted before Defendant Mullen, commenced on May 21, 2004, but was tabled in order to allow Adams to obtain documentary evidence and witness statements. (Defendants' Facts, ¶ 18, citing Defendants' Exh. A-7). The hearing resumed on May 27, 2004, and Defendant Mullen eventually found Adams guilty of the offense. (Id., ¶¶ 19-20).

On May 19, 2004, CCA Michael Tapley issued Adams a Conduct Violation Report, stating

---

[1] Adams filed an Informal Resolution Request, Grievance, and Grievance Appeal concerning this matter, all of which were denied. (See Doc. No. 25-3, PP. 12-19, 27).

in relevant part as follows:

> On the above date and approximate time, information was received that offender Adams, Edward # 533505 made 17, 3 way phone calls since the date of 4-2-04 and 17 phone calls over the set 20 minute rule (time limit). By offender Adams, Edward # 533505 own actions, he places himself in violation of Rule # 37 violation of institutional rules.

(Defendants' Exh. A-15). The hearing for this violation, conducted before Defendant Mullen, commenced on May 21, 2004, but was tabled in order to allow Adams to obtain witness statements. (Defendants' Facts, ¶ 22, citing Defendants' Exh. A-14). The hearing resumed on May 24, 2004, and Defendant Mullen eventually found Adams guilty of the offense. (Id., ¶¶ 23-24). As a result, Defendant Mullen recommended ten days of disciplinary segregation, and a referral to the administrative segregation committee. (Id., ¶ 25).

On May 19, 2004, Defendant Sampson issued Adams a Conduct Violation Report, stating as follows:

> On the above date and time I received a copy of a letter sent from offender Adams, Edward # 533505 to offender Shaefer, Johnna # 282159 for review. In this correspondence, offender Adams alludes I need to be removed from my position as restorative justice activities coordinator due to my incompetence and lack of ability to adequately supervise this program.
>
> I find offender Adams' statements insulting, offensive and disrespectful.
>
> The above action places offender Adams, Edward # 533505 in violation of Rule 21: Insulting Behavior.

(Defendants' Exh. F-36). The hearing for this violation, conducted before Defendant Mullen, commenced on May 21, 2004, but was tabled in order to allow Adams to obtain witnesses. (Defendants' Facts, ¶ 27, citing Defendants' Exh. F-35). The hearing resumed on May 27, 2004, and Defendant Mullen eventually found Adams guilty of the offense. (Id., ¶¶ 28-29). As a result, Defendant Mullen recommended ten days of disciplinary segregation. (Defendants' Exh. F-35). On May 28, 2004, however, Superintendent I Joe Tiffany dismissed and expunged the violation, stating

it did not meet the definition of # 21, Insulting Behavior. (Defendants' Facts, ¶ 30, citing Defendants'

Exh. F-35).[2]

Finally, on May 21, 2004, Defendant Simpson issued Adams a Conduct Violation Report,

stating in relevant part as follows:

> Based on confidential information, it has been learned that offender Adams,
> Edward, 533505 has received payments totaling $100.05 for personal services
> to other offenders at NECC. This places offender Adams in violation of rule
> # 37 and institutional rules IS 8-1.3, III, C-"offender council substitutes will
> not receive any payment from another offender in return for services."
>
> Other confidential information indicated Offender Adams also received
> postage stamps and copy cards in return for personal services.

(Defendants' Exh. A-3). The hearing for this violation was conducted before Defendant Mullen on

May 27, 2004. (Defendants' Facts, ¶ 32, citing Defendants' Exh. A-2). Defendant Mullen found

Adams guilty of the offense. (Id., ¶ 33).[3]

On June 2, 2004, the Administrative Segregation Committee held a Classification Hearing.

(Defendants' Facts, ¶ 34, citing Defendants' Exh. A-1). After noting Adams had been found guilty

of four CDVs (#22, #24, #37, and #37), the Committee recommended Offender Adams' assignment

to administrative segregation pending his transfer to a C-5 level institution. (Id., ¶ 35).[4]

---

[2] Adams filed an Informal Resolution Request, Grievance, and Grievance Appeal concerning this matter, all of which were denied. In each of his entreaties, Adams asserted that in censoring his mail and punishing him for its contents, Defendants violated his rights under the First Amendment. (See Doc. Nos. 21-11, PP. 2-11; 21-12, PP. 1-7).

[3] Adams filed an Informal Resolution Request, Grievance, and Grievance Appeal concerning this matter, all of which were denied. In each of his entreaties, Adams asserted that Defendant Simpson issued him the Conduct Violation Report in retaliation for various actions on Adams' part. (See Doc. Nos. 21-5, PP. 2-16; 21-6; 21-7, PP. 1-11).

[4] Adams was serving his sentence at NECC, a facility with a custody level lower than his current classification, pursuant to the Grandfather Clause. (See Doc. No. 21-13, P. 11). Adams forfeited his right to such preferential placement, however, upon being found guilty of four conduct violations within one year. (Id.).

Plaintiff Adams filed the instant Complaint under the Civil Rights Act, 42 U.S.C. § 1983, on January 3, 2005. (Doc. No. 2). In his Complaint, Adams outlines the various conduct violations and punishments he received. Adams then alleges as follows: "[E]very Defendant herein, acting individually and in their official capacity and under the color of state law, violated Plaintiff's rights under the First, Eighth, Eleventh and Fourteenth Amendments of the United States Constitution by retaliation and refusing to mail his correspondence, his due process and by bringing false disciplinary charges against him in retaliation for lodging complaints against staff, and extreme discipline that resulted in his transfer to a maximum security facility, constituting atypical and significant hardship on plaintiff in relation to ordinary incidents of prisons life." (Compl., P. 6(g), ¶ 21). Adams requests injunctive relief, declaratory judgment, actual and punitive damages, and attorney's fees. (Id., P. 7).

As stated above, Defendants filed the instant Motion for Summary Judgment on September 20, 2005. (Doc. No. 21). In their motion, Defendants maintain no genuine issue of material fact exists, and thus Defendants are entitled to judgment as a matter of law. (Memorandum in Support of Defendants' Motion for Summary Judgment, P. 1).

<h2 align="center">SUMMARY JUDGMENT STANDARD</h2>

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion.

Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must

set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not

the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at

247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson,

477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most

favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson,

477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there

is a genuine issue for trial. Id. at 249.

## DISCUSSION[5]

### I.      Conspiracy

In his Complaint, Plaintiff Adams alleges Defendants conspired against him, as follows:

> 7.      On or about May 18, 2004, Defendant, Joyce Simpson, together with Assistant Superintendent, Mary Riorden and Mailroom Clerk, C. Perkins, initiated an investigation into Plaintiff's files for the purpose of conspiring to issue Plaintiff a series of violations to violate Plaintiff's status under the "Grandfather Clause"[6] classification and have him transferred to a maximum security facility....

> 10.     On or about May 18, 2003 (sic), Defendant Stange, FUM, directed COI Melvin Strange, to search Plaintiff's cell[7] that resulted in another violation be (sic) issued to Plaintiff for a Rule 24, Contraband, in furtherance of the

---

[5] In his Complaint, Plaintiff Adams presents his claims in narrative form, rather than as a series of numbered Counts. The Court therefore addresses Adams' claims as it construes them to exist in his Complaint.

[6] See footnote four, supra.

[7] In his Affidavit, submitted in support of Defendants' Motion for Summary Judgment, Defendant Strange testifies that he was not ordered by FUM Stange to search Adams' cell. (Doc. No. 21-24, ¶ 5).

conspiracy, agreeing to issue a string of violations in order to have Plaintiff placed in disciplinary segregation and transferred to maximum security facility....

15.    On or about May 27, 2004, plaintiff while in disciplinary segregation, had an administrative hearing conducted by defendant Michael Mullen, CTS, on the remaining violations and was found guilty on all, whereby furthering the conspiracy....

(Compl., PP. 6(b), 6(c), 6(d), 6(e), ¶¶ 7, 10, 15).

Upon review of the record, the Court finds Adams offers only conclusory allegations of conspiracy, with no supporting facts tending to suggest a mutual understanding or meeting of the minds. Adams' conspiracy claim thus lacks an arguable basis in fact, and so Defendants' Motion for Summary Judgment on this issue must be granted. See, e.g., Cooper v. Delo, 997 F.2d 376, 377 (8th Cir. 1993).

## II.    First Amendment Retaliation

In his Complaint, Plaintiff Adams alleges Defendants retaliated against him in violation of his rights under the First Amendment, by bringing false disciplinary charges against him as punishment for his lodging complaints against prison staff. (Compl., ¶ 21). Under Eighth Circuit law, "[c]onduct violations cannot be deemed retaliatory when they were issued for actual violations of prison rules." Moots v. Lombardi, 453 F.3d 1020, 1023 (8th Cir. 2006), citing Moore v. Plaster, 266 F.3d 928, 931 (8th Cir. 2001); see also Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990) ("While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform."). "Therefore, a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' that the inmate actually committed a rule violation." Moots, 453 F.3d at 1023, quoting Goff v. Burton, 7 F.3d 734, 739 (8th Cir. 1993). The Court thus must consider whether there existed "some evidence" Plaintiff Adams committed the violations

described in each of the Conduct Violation Reports.

A.    **Defendant Perkins**

As stated above, Defendant Perkins issued Adams a Conduct Violation Report on May 18, 2004, charging Adams with a violation of Rule 22, Theft.  (Defendants' Exh. A-21).  In an Affidavit submitted in support of Defendants' Motion for Summary Judgment, Defendant Perkins testifies regarding the incident as follows:

3.    Sherry Courtney, a Librarian at NECC, had advised the mail room to be on the look out for copies of legal materials from the NECC library as copies were being taken from the library without being paid for.

4.    On May 18, 2004 I was on duty in NECC's mail room.

5.    At all times, due to security concerns, all manila envelopes received in the mail room at NECC that were not marked as privileged were searched.

6.    On May 18, 2004, I searched a 9x12 manila envelope, not marked as privileged, sent by Offender Edward Adams, Reg. No. 533505, to Johnna Shea Schaffer, an inmate at Women's Eastern Reception Diagnostic and Correctional Center ("WERDCC").

7.    I discovered 9 pages of green paper that had been generated from the NECC library legal computers in the envelope and the pages had not been stamped "purchased."

8.    At that time, it was my understanding that it was NECC library procedure that each page generated from the NECC legal computer was to be stamped as "purchased."

9.    I issued Offender Adams conduct violations for Rule # 22, Theft and Rule # 24, Contraband.

10.    The envelope and all its contents were attached to the conduct violation as evidence.

(See Doc. No. 21-23).  The Court notes that Defendant Perkins' statement and observations were considered by Defendant Mullen during the hearing for this violation.  (Defendants' Exh. A-20).

Upon consideration of the foregoing, the Court finds there existed "some evidence"

supporting the finding of guilt on this violation of prison rules. See Earnest v. Courtney, 64 F.3d 365, 367 (8th Cir. 1995). Defendants' Motion for Summary Judgment on this portion of Adams' retaliation claim thus must be granted, as the punishment in question was imposed on the basis of an actual violation of prison rules. See Moots, 453 F.3d at 1023.

## B.    Defendant Strange

As stated above, Defendant Strange issued Adams a Conduct Violation Report on May 18, 2004, charging Adams with a violation of Rule 24, Contraband. (Defendants' Exh. A-8). In an Affidavit submitted in support of Defendants' Motion for Summary Judgment, Defendant Strange testifies regarding the incident as follows:

> 6.    On May 18, 2004, I conducted a search of cell 6c-238. The bottom bunk of the cell was assigned to Offender Edward Adams, Reg. No. 533505.
>
> 7.    My search of Adams' bunk revealed $84.88 worth of stamps which placed Offender Adams in violation of Rule # 24, Contraband.
>
> 8.    I issued Adams a conduct violation for Rule # 24, Contraband, on May 18, 2004.

(See Doc. No. 21-24). The Court notes that Defendant Strange's statement, observations, and documentary evidence were considered by Defendant Mullen during the hearing for this violation. (Defendants' Exh. A-7).

Upon consideration of the foregoing, the Court finds there existed "some evidence" supporting the finding of guilt on this violation of prison rules. See Earnest, 64 F.3d at 367. Defendants' Motion for Summary Judgment on this portion of Adams' retaliation claim thus must be granted, as the punishment in question was imposed on the basis of an actual violation of prison rules. See Moots, 453 F.3d at 1023.

## C.    Defendant Sampson

As stated above, Defendant Sampson issued Adams a Conduct Violation Report on May 19,

2004, charging Adams with a violation of Rule 21, Insulting Behavior. (Defendants' Exh. F-36). In

an Affidavit submitted in support of Defendants' Motion for Summary Judgment, Defendant Sampson

testifies regarding the incident as follows:

> 4.    When I read Offender Adams' letter that stated he thought I was incompetent as Coordinator of the [Restorative Justice Program] and he wanted to have me fired, I was deeply offended.
>
> 5.    I told Offender Adams that I thought his letter was disrespectful and offensive and undermining to the entire program.
>
> 6.    I issued Offender Adams a conduct violation for Rule # 21, Insulting Behavior, because I was offended and not out of spite or retaliation.

(See Doc. No. 21-21). The Court notes that Defendant Sampson's statement, observations, and

documentary evidence were considered by Defendant Mullen during the hearing for this violation.

(Defendants' Exh. F-35).[8]

Upon consideration of the foregoing, the Court finds there existed "some evidence"

supporting the finding of guilt on this violation of prison rules. See Earnest, 64 F.3d at 367.

Defendants' Motion for Summary Judgment on this portion of Adams' retaliation claim thus must

be granted, as the punishment in question was imposed on the basis of a perceived violation of prison

rules.[9] See Moots, 453 F.3d at 1023.

### D.    Defendant Simpson

As stated above, Defendant Simpson issued Adams a Conduct Violation Report on May 21,

---

[8] The Court further notes Plaintiff Adams does not dispute the contents of the letter; rather, he maintains only that he had a First Amendment right to make the statements at issue.

[9] As noted above, on May 28, 2004, Superintendent I Joe Tiffany dismissed and expunged this violation, stating it did not meet the definition of # 21, Insulting Behavior. (Defendants' Facts, ¶ 30, citing Defendants' Exh. F-35). Under Eighth Circuit law, however, "[t]he fact that the conduct violation was later expunged does not mean that there was not some evidence for its imposition." Moots, 453 F.3d at 1023 (citation omitted).

2004, charging Adams with a violation of Rule 37. (Defendants' Exh. A-3). Defendant Simpson stated in the report that the basis for the conduct violation was "confidential information." (Id.). In an Affidavit submitted in support of Defendants' Motion for Summary Judgment, Defendant Simpson testifies regarding the incident as follows:

> 3. I received the attached documentation from Mary Riorden indicating that Offender Adams was receiving payment in exchange for his legal services to other inmates.[10]
>
> 4. On May 21, 2004, I issued Adams a conduct violation for Rule # 37, Violation of Institutional Rules, for selling legal services and terminated his position as an inmate law clerk....
>
> 7. I did not issue the conduct violation to Offender Adams in retaliation for Adams' activities as a law clerk or for any complaint he filed about me.

(See Doc. No. 21-22, P. 1). The Court notes that Defendant Simpson's statement and documentary evidence were considered by Defendant Mullen during the hearing for this violation. (Defendants' Exh. A-2).

Upon consideration of the foregoing, the Court finds there existed "some evidence" supporting the finding of guilt on this violation of prison rules. See Earnest, 64 F.3d at 367. Defendants' Motion for Summary Judgment on this portion of Adams' retaliation claim thus must be granted, as the punishment in question was imposed on the basis of an actual violation of prison rules. See Moots, 453 F.3d at 1023.

### III.    First Amendment Violation

In his Complaint, Plaintiff Adams alleges Defendants violated his rights under the First Amendment, as follows:

---

[10] Defendant Simpson attaches to her Affidavit copies of transaction records from Adams' prisoner account. (See Doc. No. 21-22, PP. 3-4).

9. Upon receiving the envelope and its contents[11], from Defendant C. Perkins, Mailroom Clerk, the FUM, Bill Stange, reviewed the contents of the envelope and letter, made a copy or copies of the letter and forwarded a copy of said letter to Housing Unit Five (5), Defendant, Caseworker, Carlos Sampson, in violation of Plaintiff's First Amendment Rights....

11. On or about May 19, 2004, defendant Carlos Sampson, after reading said letter, became enraged and upset due to the contents of the letter in reference to Sampson's performance as NECC Staff Coordinator of the Restorative Justice Program, and issued plaintiff a conduct violation for a Rule 21, Insulting Behavior, in violation of the prison's regulations.

12. Plaintiff was found guilty on May 27, 2004 of the Rule 21 and sentenced to 10 days disciplinary segregation. The disciplinary action was based on the language in the letter whereby violating plaintiff's right to free speech as guaranteed by the United States Constitution. The discipline imposed constituted atypical hardship to plaintiff in relation to ordinary incidents of prison life.

(Compl., PP. 6(c), 6(d), ¶¶ 9, 11, 12).

Under Eighth Circuit law, the imposition of disciplinary action on an inmate for language in outgoing correspondence not directed to prison officials can constitute a violation of the First Amendment. See Loggins v. Delo, 999 F.2d 364 (8th Cir. 1993). That proposition does not help Adams here, however, for several reasons. First, the Court notes the original screening of Adams' mail was permissible under Eighth Circuit law. See Ortiz v. Fort Dodge Correctional Facility, 368 F.3d 1024, 1026 (8th Cir. 2004) ("While prisoners have a right to send and receive mail, prison officials have a legitimate interest in monitoring that mail for security reasons."). Next, with respect to the confiscation of Adams' correspondence, the Court finds such action properly was performed not as punishment for the written contents of Adams' letter, but rather as a result of the inclusion of stolen papers within the correspondence. See Smith v. Delo, 995 F.2d 827, 830 (8th Cir. 1993) (prison officials may screen mail to determine whether it contains evidence of illegal activity, including

---

[11] As the Court construes his Complaint, Adams refers here to the letter searched and confiscated by Defendant Perkins on May 18, 2004.

contraband, and further may refuse to process mail containing such matters), cert. denied, 510 U.S. 1052 (1994).

Finally, the Court finds that while Defendant Sampson's actions in response to the contents of Adams' letter may have had First Amendment implications, as noted above Superintendent I Joe Tiffany dismissed and expunged the violation before Adams was required to fulfill the imposed disciplinary action. (See Defendants' Facts, ¶ 30, citing Defendants' Exh. F-35). Furthermore, the expunged violation played no role in Adams' transfer to a higher security facility. (See Defendants' Exh. A-1). Thus, Adams' First Amendment rights were not violated by Defendant Sampson, and so Defendants' Motion for Summary Judgment on this claim will be granted.

## IV.    Due Process Violations

### A.    Denial Of Right To Present Evidence

In his Complaint, Adams first asserts his due process rights were violated as follows:

15.    On or about May 27, 2004, plaintiff while in disciplinary segregation, had an administrative hearing conducted by defendant Michael (sic) Mullen, CTS, on the remaining violations and was found guilty on all, whereby furthering the conspiracy. Plaintiff, not being able to defend against said allegations due to his being in segregation, was unable to present evidence to support his defense. Plaintiff was denied his Fourteenth Amendment rights to due process to present documentary evidence during the hearing.

(Compl., P. 6(e), ¶ 15).

Upon consideration, the Court finds Adams' allegations are refuted by the record. Specifically, the Court notes that before finding Adams guilty of each conduct violation, Defendant Mullen considered both offender and witness statements, and documentary evidence presented by Adams. (See Defendants' Exhs. A-20; A-7; A-14; F-35; A-2). The Court thus finds Adams was not denied the right to present evidence during his disciplinary hearings, and so Defendants' Motion for Summary Judgment on this point must be granted.

**B.      Denial Of Right To Impartial Fact-Finder**

In his second allegation of a due process violation, Adams states in relevant part as follows:

16.      Defendant Richard Mullen, hearing officer, was instructed by FUM Stange to find plaintiff guilty of said violations whereby violating plaintiff's right to due process by relying on the instructions of his supervisor.  Plaintiff asserts that he was entitled to a hearing before an impartial fact-finder--that is, one whose mind is not already made up.

(Compl., P. 6(e), ¶ 16).

Upon review of the record, the Court finds Adams presents absolutely no evidence tending to support the above allegation.  Under these circumstances, Defendants' Motion for Summary Judgment on this issue must be granted.[12]

**V.      Remaining Claims**

The Court has considered Adams' remaining allegations, including both his claims under the Eighth and Eleventh Amendments, and his claims against Defendant Moore, and finds them to be without merit.[13]

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 21) is **GRANTED**, and Plaintiff's claims are **DISMISSED** with prejudice.  An appropriate Judgment will accompany this Memorandum and Order.

---

[12] To the extent Adams intended to present other incidents of due process violations in his Complaint, the Court notes that neither Adams' placement in administrative or disciplinary segregation, nor his eventual transfer to a maximum security facility, implicated the Due Process Clause.  See, e.g., Portley-El v. Brill, 288 F.3d 1063, 1065-66 (8th Cir. 2002); Freitas v. Ault, 109 F.3d 1335, 1337-38 (8th Cir. 1997).  Furthermore, the Court finds no indication in the record that Adams received less than adequate due process during the disciplinary proceedings themselves.

[13] In light of the above discussion dismissing Adams' claims in their entirety, the Court finds it unnecessary to address Defendants' alleged entitlement to qualified immunity.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike (Doc. No. 28) is **DENIED** as moot.

Dated this <u>18th</u> day of September, 2006.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE